NO. 07-02-0332-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 24, 2003

_____

IN THE INTEREST OF R.L.T., A MINOR CHILD
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 01-07-18,463; HON. ANDY KUPPER, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Calvin Ray Thompson (Thompson) appeals from an order terminating the parental relationship between him and his daughter, R.L.T. Through two issues, he attacks the grounds upon which termination was based. That is, he contends that termination could not be based upon §161.001(1)(Q) of the Texas Family Code because the statute is unconstitutional. Nor could it be founded upon §161.001(1)(L) of the same code for there was neither legally nor factually sufficient evidence illustrating that he was criminally responsible for the death or serious injury of a child. We affirm the order of termination.

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

### Background

Patricia Dianne Caswell petitioned the trial court to terminate the parent/child relationship between Thompson and R.L.T.[2] Several grounds were alleged to justify the relief sought. However, the trial court concluded that termination was warranted only because Thompson 1) had been convicted or placed on community supervision for being criminally responsible for the death or serious injury of a child under §22.021 of the Texas Penal Code, TEX. FAM. CODE ANN. §161.001(1)(L)(viii) (Vernon 2002), and 2) knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *Id.* §161.001(1)(Q).

### Issue One

Thompson initially contends that termination under §161.001(1)(Q) is impermissible since the provision is unconstitutional. Furthermore, it is purportedly so because it is overly broad and discriminates on the basis of wealth. So too does he argue that if the statute is constitutional, there is no evidence to support the finding that his incarceration resulted in his inability to care for the child; this is supposedly so because R.L.T.'s mother can provide the requisite care. We overrule the issue.

*Sufficiency of the Evidence*

Under §161.001(1)(Q) of the Family Code, a trial court may terminate the parent/child relationship if the court finds by clear and convincing evidence that the parents:

---

[2]Though once married to each other, Thompson and Caswell are now divorced.

knowingly engaged in criminal conduct that has resulted in the parent's:

(i)    conviction of an offense; and

(ii)    confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition . . . .

TEX. FAM. CODE ANN. §161.001(1)(Q) (Vernon 2002). Thompson argues that there is no evidence to support termination under this provision "unless [his ex-wife and mother of R.L.T.] admits that she was not a person with whom Appellant could leave the child for safe and proper care, custody, and supervision." In other words, he contends that because R.L.T. has another parent who may be able to care for her, the trial court could not find that he was unable to care for the child due to his incarceration. Furthermore, our decision in *In re Caballero*, 53 S.W.3d 391 (Tex. App.--Amarillo 2001, pet. denied) is cited as support for the proposition. Thompson misconstrues our holding in *Caballero*.

In *Caballero*, the incarcerated parent argued that he could care for the child by placing her with his mother or fiancee. However, the State disagreed. It believed that the parent was required to personally care for the child under the statute. In response to both contentions, we refused to hold that the word "care" found in §161.001(1)(Q) was limited to care personally provided by the parent whose rights were in jeopardy. *Id.* at 395. Thus, we recognized that if the parent arranged for others to care for the child while he was incarcerated and these others were willing to and capable of caring for the child, then §161.001(1)(Q) may be inapplicable. *Id.* at 395-96. That holding made and continues to make sense for parents who often arrange to have surrogates act in their stead for extended periods of time, *e.g.* a boarding school. Yet, we did not hold that the statute has no application simply because someone or some entity may be available to care for the

3

child by default. Nor do we do so now. To adopt such a proposition would effectively nullify the proviso. In other words, the statute would never have application for the State is always available by default to assume the care of a child abandoned by its parents.

Rather, it was and is implicit in our opinion that the surrogate arise through agreement with or arrangement by the incarcerated parent. We indicated as much when we said that "the parent must produce some evidence as to how [the parent] would provide or arrange to provide care for the child during that period" of incarceration, and when the parent does so, then the State must prove that "the arrangement would not satisfy the *parent's duty* to the child." (Emphasis added.) *Id.* at 396. In short, the incarcerated parent must show that another is willing to assume his duties and act on his behalf while he cannot act. *Id.* Next, no evidence appears of record illustrating such a consensual arrangement between Thompson and Caswell, his ex-wife and R.L.T.'s mother. Admittedly, as a parent of the child, Caswell has her own duty to support the youth. Yet, that does not relieve Thompson from performing his parental duties. *See* TEX. FAM. CODE ANN. §151.001(a)(2) (Vernon 2002) (stating that a parent of a child has the duty of care, control, protection and reasonable discipline of the child); *In re B.I.V.*, 923 S.W.2d 573, 575 (Tex. 1996) (stating that a single parent who bears the entire financial burden of supporting the child is entitled to reimbursement from the other parent who has neglected the duty).

Simply put, both R.L.T. and her mother were entitled to look to Thompson for help in caring for R.L.T. *Id.* If, because of his incarceration for over two years, he could not reciprocate directly or through a surrogate who agrees to undertake his duty, he is neither

4

acting as a parent nor performing his duties. And, in that situation, statute permitted the termination of his rights even though Caswell was fulfilling her obligation to the child. Thus, we cannot hold that the trial court's determination lacks the support of legally sufficient evidence simply because Thompson's ex-wife performed both her moral and legal duty to care for R.L.T.

*Constitutionality of §161.001(1)(Q)*

As to the constitutionality of the statute, we conclude that appellant waived his argument. He did not assert before the trial court that the provision impermissibly discriminated against him on the basis of wealth. Thus, because this aspect of the complaint raised on appeal fails to comport with the objection asserted below, the ground was waived. *See* TEX. R. APP. P. 33.1(a) (requiring the complaint to be made to the trial court); *Moser v. Davis,* 79 S.W.3d 162, 169 (Tex. App.--Amarillo 2002, no pet.) (holding that an issue is waived when the objection on appeal does not comport with the objection made at trial); *Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.--Houston [1st Dist.] 1996, no writ) (stating that constitutional argument is also encompassed by the rule requiring preservation of the issue in the trial court).[3]

Second, and with regard to the contention that the statute is overly broad, Thompson's argument consists of the following:

---

[3]Assuming *arguendo* that the issue had been preserved, we also note that Thompson has not illustrated that §161.001(1)(Q) discriminates against the impoverished. The record itself indicates that means may be available to assist the poor in caring for their children. Indeed, it appears that Thompson *once* arranged to have clothing and a gift sent by a church to R.L.T., though he was incarcerated. Furthermore, it is quite conceivable that government programs may exist to help those in financial distress care for their children. So, there may well be means available to an impoverished parent enabling the parent to care for a child, assuming the parent pursues those means. And, to the extent that such avenues exist, we cannot say that §161.001(1)(Q) discriminates against the poor. Yet, because the issue of poverty was not raised or developed at trial, we can only speculate on the matter.

5

> . . . it is a discrimination which is sweeping in its scope: all persons convicted and incarcerated for any crime of greater severity than a state jail felony become subject to termination of their parental rights, limited only by the 'best interest of the child' requirement of the Family Code §161.001(2); <u>Texas</u> <u>Penal</u> <u>Code</u> §§12.34, 12.33, 12.32 and 12.31 (penalty ranges for third, second, first degree and capital offenses).

As can be seen, there is no substantive discussion of the doctrine of overbreadth, its scope or its prohibitions. Nor does Thompson explain why those sentenced to terms of imprisonment exceeding two years should not be treated differently from those receiving a lesser sentence. Nor does appellant cite any authority (direct or analogous) supporting his conclusion that the statute is unconstitutionally over-inclusive. Given the absence of citation to authority and substantive analysis, this aspect of issue one was also waived. TEX. R. APP. P. 38.1(h) (stating that a brief must contain a clear and concise argument for the contentions made, with appropriate citation to legal authority and the record); *Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002) (stating that the appellant must present specific arguments and authorities supporting his contentions when briefing a constitutional issue); *Dunlap v. Excel Corp.,* 30 S.W.3d 427, 434 (Tex. App.--Amarillo 2000, no pet.) (holding that substantive analysis and citation to authority must accompany an issue to avoid waiver); *Goode v. Shoukfeh,* 915 S.W.2d 666, 674 (Tex. App.-- Amarillo 1996), *aff'd,* 943 S.W.2d 441 (Tex. 1997) (holding that the failure to properly brief an argument is grounds to conclude that the argument was waived).

In short, we overrule issue one. Additionally, since only one ground will support termination and we have found that the trial court did not err in terminating the parent-child relationship under §161.001(1)(Q), we need not address issue two. Accordingly, the judgment of the trial court is affirmed.

6

Brian Quinn
Justice